In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1241

DARREN CUFF,

*Plaintiff-Appellee,*

*v.*

TRANS STATES HOLDINGS, INC., *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 1349 — **Harry D. Leinenweber**, *Judge.*

ARGUED OCTOBER 30, 2013 — DECIDED SEPTEMBER 19, 2014

Before EASTERBROOK, RIPPLE, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* United Airlines contracts with other firms for regional air services under the "United Express" brand. Trans States Holdings (Holdings) is one of United's suppliers. It owns two air carriers: Trans States Airlines (Trans States) and GoJet Airlines (GoJet). Our case presents the question whether Darren Cuff, who was on the

payroll of Trans States, was covered by the Family and Medical Leave Act.

The FMLA applies only if the employer has at least 50 employees within 75 miles of a given worker's station. 29 U.S.C. §2611(2)(B)(ii). Cuff worked at O'Hare Airport in Chicago. The parties agree that in January 2010, when it fired Cuff after he took leave despite its denial of his request under the FMLA, Trans States had 33 employees at or within 75 miles of O'Hare, while GoJet had 343 and Holdings had none. Cuff contends that he worked for Trans States and Go-Jet jointly. The district court granted summary judgment in Cuff's favor on that subject, 816 F. Supp. 2d 556 (N.D. Ill. 2011), and a jury later determined that Cuff met the other standards of eligibility for leave. It awarded Cuff $28,800 in compensatory damages, to which the judge added $14,400 front pay in lieu of reinstatement. The court also awarded Cuff about $325,000 in attorneys' fees and $6,000 in costs and interest. 2013 U.S. Dist. Lexis 4467 (N.D. Ill. Jan. 11, 2013).

The Department of Labor has issued a regulation, whose validity defendants do not challenge, providing that workers are covered by the FMLA when they are jointly employed by multiple firms that collectively have 50 or more workers. 29 C.F.R. §825.106(a). A separate regulation adds that two or more firms may be treated as a single employer when they operate a joint business. 29 C.F.R. §825.104(c). Cuff invoked both of these provisions, but the district judge relied exclusively on the former. Defendants have muddied the waters by directing much of their appellate presentation to the joint-business question. They observe, for example, that the National Mediation Board has concluded that the pilots at Trans States and GoJet must negotiate separately because the

two carriers do not conduct joint air operations. But that is irrelevant to the question whether Trans States and GoJet jointly used Cuff's services. The joint-employment inquiry under §825.106(a) is person-specific; it is possible for one person to be employed jointly by two firms that otherwise have distinct labor forces.

Regulation 825.106(a) supplies a list of factors to consider—all relevant, none dispositive. We remarked in *Moldenhauer v. Tazewell-Pekin Consolidated Communications Center*, 536 F.3d 640, 644 (7th Cir. 2008), that open-ended lists do not decide concrete cases. Often a set of factors to be considered and balanced implies the need for a trial, but summary judgment is possible when the facts allow. Cf. *Secretary of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987). And, like the district court, we think the summary-judgment record allows only one answer. The two lead factors identified by the regulation are whether "there is an arrangement between employers to share an employee's services" and whether "one employer acts directly or indirectly in the interest of the other employer in relation to the employee". Both questions must be answered "yes," none of the remaining factors helps defendants, and it follows that Cuff was a joint employee of at least Trans States and GoJet, if not of Holdings too.

Cuff was the "regional manager" of Trans States and represented the three firms in their dealings with United and O'Hare. His business card bore the logos of all three firms. Terry Basham, the Vice President for Customer Services at Holdings (the corporate parent of the two air carriers) testified by deposition that Cuff had been hired to provide services to both Trans States and GoJet. The internal directories of Holdings and United Express identified Cuff as the per-

son to contact with any question about how Trans States or GoJet operated at O'Hare. Cuff's supervisor notified United and other airlines in 2008 that, "[e]ffective immediately, Darren Cuff, Regional Manager, Trans States Holdings, Inc. [sic: his official employer was Trans States Airlines] will be your go to person if there are any operational issues or concerns with Trans States or GoJet Airlines flights operating in and out of your cities." Cuff related by deposition and affidavit that he worked with Trans States and GoJet every day. Cuff's replacement was put on the payroll of Holdings because, Basham explained, "We made the decision to put the support positions that support both [Trans States and GoJet] where we can into a Holdings position." There's more, but this is quite enough.

This case had to be tried, notwithstanding the resolution of the joint-employer question, because defendants made a blizzard of other contentions. They insisted, for example, that the FMLA did not apply because Cuff would not have needed medical leave had he been more conscientious in following his physicians' recommendations. The district judge ultimately squelched that defense on legal grounds but could not so easily dispatch others, which depended on the principle, established in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), that after-acquired evidence of an employee's misconduct can limit damages even if the evidence does not retroactively erase the violation. Although *McKennon* was decided under the Age Discrimination in Employment Act, its analysis is generalizable to remedies under other federal statutes. Every court of appeals that has considered the subject has concluded that *McKennon* applies to the FMLA. See, e.g., *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 298

(4th Cir. 2009); *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 514 (6th Cir. 2006). We agree with that conclusion.

Defendants contended (among other things) that Cuff had a sexual relationship with a subordinate, lied about it in an internal investigation, failed to report an arrest for driving while intoxicated, and was taking so many narcotic drugs for his medical conditions that he was not fit for work. The judge allowed defendants to introduce evidence that Cuff had lied during an internal investigation but excluded other evidence for problematic reasons. For example, the judge wrongly believed that defendants could not introduce any evidence about misconduct unless they could show that they had fired another worker for doing exactly what they belatedly learned about Cuff. That's not what *McKennon* holds; it says that damages can be curtailed if the employer would have fired this employee, in particular, on learning of the worker's misconduct. That principle is not an anti-discrimination norm that requires a comparison with how the employer has treated other workers.

The district judge also excluded some of defendants' evidence under Fed. R. Evid. 403 on the ground that it would be used to impeach Cuff. This misunderstands the reason why it was offered and is wrong on its own terms. The question under Rule 403 is not whether evidence is "prejudicial"; all defense evidence is designed to undermine the plaintiff's case; it is whether the evidence is *unfairly* prejudicial. Any evidence within the scope of *McKennon* will cast the plaintiff in a poor light. The worse the light, the more likely the belatedly discovered facts would have produced a discharge. It is inappropriate to exclude evidence under Rule 403 because it casts the plaintiff in a *really* bad light, because doing that

would effectively nullify the strongest of the class of defenses that *McKennon* recognizes.

When a district judge excludes evidence, the party aggrieved by that decision must make an offer of proof if it wants to raise the issue on appeal. Fed. R. Evid. 103(a)(2). An offer of proof in a situation like this would be something along the lines of: "Manager X would testify that, had he known Fact Y [the fact excluded from evidence], he would have fired Cuff." Cuff's brief asks us to hold that defendants forfeited their appellate arguments by not making offers of proof. In response, defendants' reply brief says—nothing. When we explored this subject at oral argument, defendants' lawyer resisted giving an answer but, after an extended colloquy, finally conceded that the defense had not made even one offer of proof at trial. That scuttles a *McKennon* defense, because without anyone in authority testifying that Cuff would have been sacked when the truth came out (had he still been on the payroll), there was no basis to stop the running of damages. The jury's verdict therefore stands.

FMLA authorizes an award of reasonable attorneys' fees to the prevailing party. 29 U.S.C. §2617(a)(3). Defendants concede that Cuff prevailed, and they do not contest either the number of hours counsel devoted to the case or the hourly rate counsel charged. Defendants' sole argument is that an award of almost $325,000 is not reasonable in relation to Cuff's recovery, which is less than $50,000.

The ratio certainly seems high. Rational people do not set out to invest $325,000 in order to obtain $50,000. But then Cuff's lawyers surely did not expect at the outset of this case to invest that much legal time in its pursuit. Sometimes events during the litigation change the calculus, and a law-

yer must avoid the sunk-cost fallacy. If, after spending $25,000 in legal time, a lawyer is confronted with a defense that will cost $30,000 to defeat, counsel will not say: "It is irrational to spend $55,000 to get $50,000." The $25,000 is sunk; if the suit is abandoned the recovery will be zero, so the right question is whether it is reasonable to spend $30,000 more to get $50,000, and the answer is yes. Suppose the same thing happens over and over in a suit, with one unexpected development after another raising the costs without raising the expected recovery. It can be reasonable to meet each of these events by investing more, even though an analysis that looks only at the bottom line ($325,000 invested to get $50,000) makes the total seem unreasonable.

Something like our example may have happened in this litigation. At each turn the defendants injected new issues and arguments into the case. And the defense was conducted in blunderbuss fashion. We have mentioned one of the examples: defendants contended that Cuff was not qualified for FMLA leave because he was not taking all of the medications his physician prescribed. The defense did not cite any statute, regulation, or judicial decision in support of this argument. That thrust on Cuff's lawyers (and the judge) the burden of legal research. Cuff's lawyers did the work and discovered that the defense argument was nothing but hot air. The right question under the FMLA is whether the employee has a medical need for leave at the time he requests time off, not whether he could have managed his life better to avoid needing time off.

Later in the case, defendants' attempts to use *McKennon* required extensive discovery and a trial, and it was all a waste because the defense did not take a basic step such as

making an offer of proof. We said earlier that the district judge erred in excluding some of the evidence that the defense proffered, but it is hard to blame the judge, who asked the defense for legal argument in support of the evidence's admissibility—only to be met with silence. The defense had not done its homework; it was content to leave the labor to Cuff's team and the judge. And so it goes for issue after issue in this litigation. Defendants do not argue that the number of hours Cuff's lawyers devoted to refuting their defenses was unreasonable; defendants contest only the aggregate outlay, yet the high total is the expected result of the way the defense was conducted.

Fee-shifting statutes such as §2617(a)(3) are designed to prevent the potentially high costs of litigation from stifling justified claims. Without such a statute, defendants might have said to Cuff at the outset: "We concede violating your rights under the Act, and we also concede that your loss is $50,000, but we plan to wage an all-out defense that will cost at least $200,000 to overcome. You might as well capitulate, because you will lose on net." A business that can establish a reputation for intransigence may end up not paying damages *and* not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly defense. That's why we held in *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633 (7th Cir. 2013), that hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect. That principle controls here—or, more properly, the district judge did not abuse his discretion in thinking that it

controls and deeming Cuff's legal expenses reasonable in light of the defendants' conduct.

AFFIRMED