# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2372

_____

Edward Blackorby

*Plaintiff - Appellant*

v.

BNSF Railway Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 17, 2019
Filed: August 23, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Edward Blackorby appeals following an adverse jury verdict on his retaliation claims under the Federal Railroad Safety Act. 49 U.S.C. § 20109 ("FRSA"). He challenges the jury instructions in several respects. We agree with his argument that the instructions misstated the "honestly held belief" defense in the context of the FRSA's contributing-factor standard and misallocated and misstated the burden of proof. Pursuant to our precedent applying the FRSA (including the

prior appeal in this case), the plaintiff bears the burden of proving that intentional retaliation in response to protected conduct served as a contributing factor in an adverse employment action. By express statutory command, the defendant then bears the burden of proving an affirmative defense—that the defendant would have taken the same action in the absence of protected conduct—by clear and convincing evidence. 49 U.S.C. § 42121(b)(2)(B)(iv). The "honestly held belief" instruction, as given in this case, stated BNSF was excused from liability if it honestly believed Blackorby had engaged in employee wrongdoing. This instruction, however, did not reference the contributing-factor standard. Moreover, the instructions as a whole expressly incorporated this defense into the plaintiff's case, failing to allocate the burden of proof to BNSF and failing to identify that burden of proof as clear and convincing evidence. Because this composite error was prejudicial, we reverse.

## I. Background

Blackorby suffered an eye injury while at work. The day of his injury was windy and dusty. He reported to a union foreman that he had gotten something in his eye. The foreman recommended saline eye drops, which provided partial relief. In fact, a small metal shard had entered his eye. The existence and severity of the eye injury was not immediately apparent, and Blackorby did not immediately report the incident to his employer, BNSF, through any official channels. Several days later his eye swelled substantially, and he went to an eye doctor. The eye doctor discovered and removed the shard.

That same day, Blackorby reported the matter to a BNSF manager, Douglas Turney, and told the manager he had a follow-up appointment the next day. Turney passed that information along to another manager, James Sadler, who asked to accompany Blackorby to his appointment. Blackorby checked with his union representative who said Sadler could accompany Blackorby but not enter the examining room or ask to see Blackorby's records. Blackorby consented to allow

-2-

Sadler to accompany him but felt uncomfortable with the situation. At the follow-up appointment, the doctor told Blackorby his eye would be okay and prescribed an antibiotic.

In the doctor's lobby, Sadler asked Blackorby if he wanted to formally report the injury. According to Blackorby, Sadler was "adamant" that Blackorby not report the injury and suggested Blackorby could say the injury happened at home. Blackorby was upset with Sadler's suggestions, called Turney, and stated he was unwilling to lie and intended to report the injury. The next day at work, he formally reported the injury.

Two days later, Blackorby received notice that he was under investigation for violating a company rule that mandated work-related injuries be reported "immediately" to the "proper manager." BNSF Maintenance of Way Operating Rule 1.2.5. BNSF provided a hearing, determined Blackorby had violated the rule, and imposed a 30-day record suspension and one-year probationary period.[1] Blackorby filed a complaint with OSHA, whose Regional Administrator determined BNSF had violated Blackorby's rights. While an appeal from that administrative ruling was pending, Blackorby filed the present action.

At a first trial, the jury returned a verdict for Blackorby, awarding him compensatory damages. On appeal from that judgment, we reversed. See Blackorby v. BNSF Ry. Co., 849 F.3d 716, 723 (8th Cir. 2017) ("Blackorby I"). We held the jury instructions at the first trial were flawed in that they stated expressly that the plaintiff need not show the defendant acted with a retaliatory animus. Id. at 722. Relying upon Kuduk v. BNSF Ry. Co., 768 F.3d 786 (8th Cir. 2014), we held that a

---

[1]During a probationary period BNSF may suspend an employee without pay if the employee commits another rule violation.

FRSA retaliation claim requires the plaintiff to prove that the employer acted with intentional retaliatory animus.  Blackorby I, 849 F.3d at 722.

On remand, the parties conducted a second jury trial as to liability only.[2]  The parties vigorously contested the jury instructions on remand.  Arguments on appeal center on four of the instructions, Instructions 16–19, which the district court used over Blackorby's objections.  We quote and discuss those four instructions below.  The jury returned a verdict for BNSF, holding Blackorby did not prove his prima facie case.  Blackorby appeals.

## II.  Discussion

> We review a district court's jury instructions for an abuse of discretion. A district court possesses broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity.  But the jury instructions, taken as a whole, must fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.  Even if we find that a district court erroneously instructed the jury, we will reverse only where the error affects the substantial rights of the parties.

Blackorby I, 849 F.3d at 720 (citations, quotation marks, and alterations omitted).

Blackorby's first challenge relates to the primary instructions in this case setting forth the elements of Blackorby's prima facie case, Instruction 16, and BNSF's affirmative defense, Instruction 18.[3]  Blackorby argues these instructions,

---

[2]BNSF had not appealed the amount of the damages award, and the parties agreed the amount of the damages award would not be retried.

[3]Instruction 16 provides:

Your verdict must be for Plaintiff Ed Blackorby and against Defendant

-4-

taken together, fail to accurately express the law as set forth in our prior opinion. He also renews his challenge to the holding of our prior opinion as an apparent means of preserving his arguments for en banc review.

We conclude that Instructions 16 and 18, read together, adequately conveyed the applicable law to the jury. Instruction 16, as mandated by our prior opinion,

> BNSF Railway on Plaintiff's claim of retaliation if the following element has been proved by the preponderance of the evidence:
>
>> That Defendant BNSF Railway intentionally retaliated against Plaintiff by placing him on a thirty (30) day record suspension and probation for one (1) year due, in whole or in part, to Plaintiff Ed Blackorby's having notified Defendant of Plaintiff's work related injury.
>
> It is not enough for Plaintiff Ed Blackorby to establish merely that two events occurred close in time to one another. If the above element has not been proved or if Defendant BNSF Railway is entitled to a verdict under Instruction No. 18, then your verdict must be for Defendant BNSF Railway, and you need not proceed further in considering this claim. You may find that Defendant BNSF Railway's act of placing him on a thirty (30) day record suspension and probation for one (1) year was due, in whole or in part, to Plaintiff Ed Blackorby's notifying Defendant of Plaintiff's work-related personal injury if it has been proved that Defendant's stated reason for placing him on a thirty (30) day record suspension and probation for one (1) year is a pretext to hide retaliation.

Instruction 18 provides:

> Your verdict must be for Defendant BNSF Railway if it has been proved by clear and convincing evidence that Defendant would have taken the same action of placing him on a thirty (30) day record suspension and probation for one (1) year even if Plaintiff Ed Blackorby had not notified Defendant of Plaintiff's work-related personal injury.

-5-

incorporated a showing of intentional retaliatory animus as an element of Blackorby's prima facie case. See Blackorby I, 849 F.3d at 722. It also conveyed expressly the statutory standard that the protected report contribute "in whole or in part" to the adverse action. See 49 U.S.C. § 20109(a). Instruction 18, in turn identified the statutory "clear and convincing evidence" standard for BNSF's burden of proving that it would have taken the same action regardless of Blackorby's protected activity. See 49 U.S.C. § 42121(b) (setting forth the defense's burden of proof incorporated by reference through 49 U.S.C. § 20109 (d)(2)(A)(i)). These two instructions, taken together, captured the requirements discussed at length in Kuduk and Blackorby I. We therefore reject Blackorby's first challenge.

Blackorby's second challenge relates to Instructions 17 and 19.[4] Looking at Instruction 17, the first sentence is an unobjectionable statement of the business judgment rule, presented generically and without reference to any party's burden of proof. The first sentence states simply that the jury "not concern" itself with the

[4]Instruction 17 provides:

> In deciding Plaintiff's claim, you should not concern yourself with whether Defendant BNSF Railway's actions were wise, reasonable, or fair. BNSF Railway cannot be held liable under the FRSA if you conclude that BNSF Railway disciplined Plaintiff based on its honestly held belief that Plaintiff engaged in misconduct or committed a rules violation.

Instruction 19 provides:

> Any issue as to the amount of monetary damages that may be awarded will not be decided by you. At this point, you are only to decide whether Plaintiff Ed Blackorby has proven the element of his claim (see Instruction Nos. 16 through 17) and whether Defendant BNSF Railway has proven it would have taken the same unfavorable personnel action regardless of any protected activity (see Instruction No. 18).

wisdom, reasonableness, or fairness of the employer's actions. To the extent Blackorby directs his challenge at this articulation of the business judgment rule, we reject his argument.

The second sentence of Instruction 17, however, is an incorrect statement of the law in the context of the contributing-factor standard. The second sentence states, "BNSF Railway cannot be held liable under the FRSA if you conclude that BNSF Railway disciplined Plaintiff based on its honestly held belief that Plaintiff engaged in misconduct or committed a rules violation." As made clear in the first panel opinion, a retaliatory motive gives rise to FRSA liability if retaliation was a "contributing factor" in the discipline decision. Blackorby I, 849 F.3d at 721–22. Contrary to the plain language of Instruction 17's second sentence, an employer can, in fact, be held liable under the FRSA if it disciplines an employee based on its honestly held belief that the employee engaged in misconduct or committed a rules violation. Liability will still exist notwithstanding such a belief if the employer's retaliatory motive also played a contributing role in the decision and if the employer fails to carry the burden of proving by clear and convincing evidence that it would have taken the same action in the absence of the protected report. As Blackorby succinctly notes in his opening brief, "A finding that an employer maintained an honest belief that an employee engaged in misconduct or violated a rule is not mutually exclusive with a finding of retaliatory intent." In fact, two causes being non-mutually exclusive is the very essence and definition of a "contributing" factor.

Moreover, this instructional error was compounded by the express misallocation and misstatement of the burden of proof. Instruction 17 itself contained no reference to a burden of proof or to the clear-and-convincing-evidence standard. Instruction 19, however, expressly and erroneously described the burden of proof for Instructions 16 and 17 as being part of the plaintiff's case. See supra n.4 ("At this point, you are only to decide whether Plaintiff Ed Blackorby has proven the element of his claim (see Instruction Nos. 16 through 17) . . . ."). Therefore, the only

interpretation consistent with Instructions 17 and 19 shows that the jury was told to consider the "honestly held belief" instruction as part of Blackorby's own prima facie case and not as a part of BNSF's heightened burden under the clear-and-convincing-evidence standard.[5]

BNSF nevertheless argues Instructions 17 and 19 were permissible, relying on a Seventh Circuit case which used an instruction nearly identical in material respects to Instruction 17. See Armstrong v. BNSF Ry. Co., 880 F.3d 377 (7th Cir. 2018). BNSF also relies on our general rule that trial courts have "wide discretion on choice of language" so long as the instructions "as a whole accurately and adequately state the relevant law." United States v. Kabat, 797 F.2d 580, 588 (8th Cir. 1986). We reject BNSF's argument for several reasons.

First, nothing in Armstrong suggests that the instructions in that case, as a whole, erroneously placed the "honestly held belief" defense into the plaintiff's case rather than properly placing it within the defendant's affirmative defense. In other words, the compounding effect of the error identified in the current instructions was not present in Armstrong. This compounding effect precludes us from holding the current instructions "as a whole" accurately conveyed the relevant law. Kabat, 797 F.2d at 588.

Second, we find Armstrong distinguishable on a separate basis. In Armstrong, the plaintiff-employee filed a report alleging a supervisor had attacked and injured him by slamming a door on his leg as he left the supervisor's office. 880 F.3d at 379. The employee later sued under the FRSA alleging retaliation based on the filing of

---

[5]We do not mean to suggest there is anything inherently impermissible about using an "honestly held belief" instruction in the context of an FRSA retaliation claim. Any such instruction, however, must be articulated in a manner that preserves the clear-and-convincing-evidence standard, the contributing factor standard, and the statutory burden-shifting framework.

his report. Id. at 380. A video of the scene, however, appeared to show the supervisor located ten to twelve feet from the door at the time the plaintiff-employee left the supervisor's office. Id. at 379. The fighting issue in Armstrong, therefore, involved a very specific type of perceived employee misconduct—the filing of a false report. Given that specific context, if the employer honestly believed the plaintiff-employee had knowingly made a false report, it would seem nearly impossible for that same report to support a claim of unlawful retaliation. The FRSA, after all, prohibits retaliation against employees who make lawful, good faith complaints. See 49 U.S.C. § 20109(a) (prohibiting discrimination "due, in whole or in part, to the employee's lawful, good faith act"). And, the act of making a false report simply is not a lawful, good faith complaint. The issue in Armstrong, therefore, was not so much a question of mixed motives or contributing factors. Rather, the issue was the existence or non-existence of a protected act. See Armstrong, 880 F.3d at 382 ("If BNSF fired Armstrong because it honestly believed that he was lying about his complaint, then it necessarily follows that it did not retaliate against Armstrong for filing a good faith complaint.").

The fighting issue in the present case, in contrast, did not involve allegations of a false report. Blackorby alleged BNSF retaliated against him for making a truthful and good-faith, albeit untimely, report and also for refusing his supervisor's coercive attempts to prevent him from making any report at all. Unlike in Armstrong, there is no inconsistency between BNSF being motivated in part by an impermissible retaliatory motive and in part by an honestly held belief that Blackorby violated a rule. As a result, we decline BNSF's invitation to adopt Armstrong as controlling in our circuit or as establishing a general rule that the language of Instruction 17 may be deemed appropriate in all cases.

BNSF also argues any error in the present instructions was not prejudicial because the jury concluded Blackorby did not prove his prima facie case. This argument, however, looks at Instruction 17 in isolation and ignores the fact that the

instructions, as a whole, wrongly identified the "honestly held belief" issue as a part of Blackorby's prima facie case. The jury's determination that Blackorby did not establish his prima facie case, therefore, supports, rather than disproves, a finding of prejudice.

It is true that, in limited circumstances, even a misallocated burden of proof may be deemed non-prejudicial. See, e.g., United States v. Ashburn, 865 F.3d 997, 1000 (8th Cir. 2017) ("[W]e have no doubt the district court would have reached the same decision with a proper application of the burden of proof."). Such circumstances typically involve overwhelming evidence and, as in Ashburn, judicial determinations of facts such as those that occur at sentencing. See id. n.3 ("Nor is there any indication the district court thought Ashburn's testimony, weighed against the other evidence, made the question too close to call, such that the applicability of the enhancement came down to which side bore the burden of proof."). The current case does not present such circumstances.

In any event, our court has been exacting when addressing the question of prejudice in the context of jury instructions that misallocate the burden of proof. In Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., for example, we stated:

> Furthermore, we do not think the error was harmless, because whether [the defendant] is legally liable for the damage . . . seems to be a very close and difficult question in the circumstances of this case, and in close factual situations such as the present one, the standard of care and burden of proof have heightened importance and can easily affect the jury's ultimate verdict. The jury may well return the same verdict . . . after a new trial upon proper instructions, but we do not think the instructional error was harmless, but instead was harmful, prejudicial, and reversible.

254 F.3d 706, 714 (8th Cir. 2001).  Given this exacting review and given the subtle distinctions at issue when assessing whether retaliatory animus played a contributing role in an employer's actions, we conclude the instructional error was prejudicial.

Finally, BNSF argues that even if Instruction 17 contained error, Blackorby did not object with sufficient specificity to preserve his present, detailed allegation of error.  As such, according to BNSF, plain-error review should apply and any instructional error does not amount to plain error.  We conclude normal abuse-of-discretion review rather than plain-error review applies.  The transcript reveals that Blackorby's objection was sufficiently specific to preserve arguments concerning both the burden of proof and the exact wording of the instructions.  In his objection, Blackorby stated:

> Now, the second paragraph of that I think is the complete misstatement of the law, and I think it's error because the way the statute is set up under the FRSA is plaintiff has to prove his case by a preponderance of the evidence.  If he does so, the burden shifts to the defense, and the defense has one affirmative defense.  And this second paragraph here essentially gives them the second affirmative defense and additionally imposes another burden on the plaintiff.

> So essentially we have to somehow prove an additional element that BNSF did not honestly hold the belief that plaintiff engaged in protected activity.  That's not in the statute anywhere.  That's never been applied in the case that claims that we have to prove that.

> Again, it gives the — BNSF a second affirmative defense, which, again, is not in the statute; and then, third, it allows the defense to basically say, well, we didn't believe it so there's no liability.  The statute is very clear that a protected act is a protected act if the plaintiff has a good-faith belief.  It does not say that the defense—I'm sorry—the defendant can escape liability with its good-faith belief.

This objection suffices to preserve arguments concerning both the precise manner of wording and the failure to properly allocate the burden of proof.  <u>See</u> Fed. R. Civ. P. 51(c) ("A party . . . must . . . stat[e] distinctly the matter objected to and the grounds for the objection.").

## III.  Conclusion

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____