# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3330
_____

Edward Blackorby

*Plaintiff - Appellee*

v.

BNSF Railway Company

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 15, 2022
Filed: February 16, 2023
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

This case returns to this Court for the third time, this time regarding an award of attorneys' fees. After plaintiff Edward Blackorby prevailed at trial and was awarded $58,240 in damages, plus post-judgment interest, Blackorby sought attorneys' fees in the amount of $701,706, litigation costs in the amount of $43,089.48, and additional filing and transcript-preparation fees in the amount of $1,620.45. The district court ultimately awarded attorneys' fees in the amount of

$570,771 and filing and transcript-preparation fees in the amount of $1,620.45 but denied the request for litigation costs. Defendant BNSF Railway Company (BNSF) appeals, asserting that the district court abused its discretion with respect to the award of attorneys' fees. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and reduce the award of fees by $103,642.50.

I.

The factual underpinnings of this case have been discussed in great detail in the two previous appeals. See Blackorby v. BNSF Ry. Co. (Blackorby II), 936 F.3d 733 (8th Cir. 2019); Blackorby v. BNSF Ry. Co. (Blackorby I), 849 F.3d 716 (8th Cir. 2017). As relevant here, Blackorby, a BNSF employee, sustained an eye injury while performing track-repair work for BNSF. After reporting his injury to his manager and filing an injury report, BNSF opened an investigation into whether Blackorby violated BNSF rules by not immediately reporting his injury. BNSF determined Blackorby violated the rules and issued a punishment in the form of a suspension and probationary period, after which Blackorby filed this action alleging that BNSF violated his rights under the Federal Railroad Safety Act (FRSA) by disciplining him in retaliation for filing the injury report. The matter proceeded to trial, where the jury returned a verdict in favor of Blackorby and awarded compensatory damages in the amount of $58,240. BNSF filed a motion for judgment as a matter of law and a motion for a new trial, both of which the district court denied. BNSF appealed, and this Court reversed, holding that the district court, relying on Blackorby's proposed jury instruction, erred in instructing the jury that it could find in favor of Blackorby without making a finding that BNSF intentionally retaliated against Blackorby. See Blackorby I, 849 F.3d at 722.

On remand, a second jury trial was held to determine liability only, with the parties agreeing to the amount of damages awarded by the jury in the first trial. In the second trial, "[t]he parties vigorously contested the jury instructions," and, after the jury returned a verdict in favor of BNSF, Blackorby appealed, challenging several jury instructions the district court issued over Blackorby's objection.

Blackorby II, 936 F.3d at 735. This Court again reversed, concluding that the challenged instructions failed to properly state the burden of proof and failed to properly place the burden on BNSF. See id. at 737-39. This Court remanded, and a third trial was held on liability only, where the jury returned a verdict in favor of Blackorby. The district court entered judgment in favor of Blackorby, awarding him $58,240 in damages, plus post-judgment interest.

After prevailing in the third trial, Blackorby sought attorneys' fees and paralegal fees in the amount of $701,706, litigation costs in the amount of $43,089.48, and additional costs for filing fees and transcripts in the amount of $1,620.45. The district court granted the motion in part, first determining that Blackorby was the prevailing party so as to entitle him to a fee award before engaging in the lodestar analysis[1] to calculate the appropriate amount of fees. The district court concluded that the hours expended by Blackorby's counsel were not reasonable insofar as they related to the first appeal because Blackorby himself necessitated the first appeal by proposing a legally erroneous jury instruction, and where the "legally erroneous jury instruction caused the first jury verdict to be set aside[,] . . . Plaintiff's counsel should not be compensated for hours that were 'redundant, inefficient, or simply unnecessary.'" R. Doc. 385, at 6 (quoting Jenkins by Jenkins v. Missouri, 127 F.3d 709, 716 (8th Cir. 1997)). In addition, the district court concluded that because "Plaintiff's counsel[] continued [to] support . . . the flawed jury instruction after the first appeal," Blackorby also could not recover fees for any hours spent on "an unnecessary petition for Supreme Court review." R. Doc. 385, at 7. The district court determined, however, that because the first trial was vital to the overall disposition of the case in that it established damages, Blackorby was entitled to some attorneys' fees related to the first trial.

Excluding the time spent on the first appeal and the petition for certiorari, the district court then determined that the reasonable hours expended by three attorneys

---

[1]"The 'lodestar'. . . 'is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" League of Women Voters of Mo. v. Ashcroft, 5 F.4th 937, 939 (8th Cir. 2021) (citation omitted).

-3-

and one paralegal,[2] multiplied by the reasonable hourly rates for each individual, resulted in a total fee amount of $570,771. Turning to Blackorby's request for litigation costs and expenses, the district court determined that, with the exception of $1,620.45 that Blackorby expended for filing fees and transcripts, the remaining request for costs and expenses was not adequately supported by the record or was not supported by the law. The district court then entered an order awarding Blackorby $570,771 in attorneys' fees, plus post-judgment interest as of the date of the order, and costs in the amount of $1,620.45. BNSF appeals the award of attorneys' and paralegal fees.

II.

BNSF asserts that the district court erred in its award of fees, arguing a reduction of the fee award is appropriate. "We review de novo the legal issues related to an award of attorneys' fees, while the actual award is reviewed for an abuse of discretion." League of Women Voters, 5 F.4th at 939. "An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.'" Pocket Plus, LLC v. Pike Brands, LLC, 53 F.4th 425, 434-35 (8th Cir. 2022).

Under the FRSA, "[a]n employee prevailing" in an FRSA action "shall be entitled to all relief necessary to make the employee whole," including "reasonable attorney fees." 49 U.S.C. § 20109(e). Determining an award of attorneys' fees often begins with the lodestar method, which "is meant to produce 'an award that *roughly*

---

[2]The district court determined that the following hours expended and hourly rates were reasonable: one attorney expended 658.6 hours at a rate of $400 an hour; one attorney expended 604 hours at a rate of $350 an hour; one attorney expended 217.7 hours at a rate of rate of $375 an hour; and one paralegal expended 73.3 hours at a rate of $195 an hour.

-4-

approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.'" League of Women Voters, 5 F.4th at 939 (citation omitted). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010).

"After a district court determines the lodestar amount, it 'may [then] consider other factors to "adjust the fee upward or downward, including the important factor of the 'results obtained.'"'" Marshall v. Anderson Excavating & Wrecking Co., 8 F.4th 700, 712 (8th Cir. 2021) (alteration in original) (citation omitted). We consider the extent of a plaintiff's success in considering the appropriate award of attorneys' fees. Thus, "[w]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id. at 713 (citation omitted). Further, "[o]ur precedent directs courts to consider whether the plaintiff failed on unrelated claims in the case and whether the plaintiff's level of success 'makes the hours reasonably expended a satisfactory basis for making a fee award.'" Id. (citations omitted). Finally, "[a]lthough there is no one methodology for calculating an award of fees, it is important 'for the district court to provide a concise but clear explanation of its reasons for the fee award.'" Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 966 (8th Cir. 2012) (quoting Hensley v. Eckerhard, 461 U.S. 424, 437 (1983)).

BNSF first argues that the award of fees is unreasonable because Blackorby only achieved limited success. BNSF's argument is premised on the fact that Blackorby originally brought two separate claims against BNSF: one alleging retaliation in violation of the FRSA and one alleging negligent failure to provide a reasonably safe workplace in violation of the Federal Employees Liability Act (FELA). BNSF argues that because the district court granted BNSF's motion for summary judgment on one of Blackorby's theories of liability for the FRSA claim and Blackorby voluntarily dismissed the FELA claim before the first trial, Blackorby

achieved only limited success. Thus, according to BNSF, Blackorby's fee award should be reduced accordingly. We disagree.

Although BNSF correctly recognizes that Blackorby dismissed his FELA claim and that BNSF prevailed on summary judgment with respect to one theory of liability for the FRSA claim, Blackorby undisputedly prevailed at trial on his FRSA claim. As this claim was at the heart of Blackorby's case, his degree of success is significant, regardless of the fate of his FELA claim or another theory of liability underlying his FRSA claim. See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000) (concluding that where plaintiff received a $25,000 judgment on the sexual harassment claim "at the heart of her case" she had "significant" success, despite the fact that she was unsuccessful on other related claims). Here, the crux of Blackorby's claim has always been that he was wrongfully retaliated against by BNSF for reporting his workplace injury.

BNSF further argues that we should order a pro rata reduction of fees to correct the excessive nature of the fee award, as demonstrated by the vast gulf between the $58,240 in damages and the $570,771 fee award. This argument is based on Gumbhir v. Curators of University of Missouri, 157 F.3d 1141 (8th Cir. 1998). However, BNSF's reliance on this case is misplaced. In Gumbhir, this Court ordered a pro rata reduction of a fee award because the case involved "a relatively modest claim for compensatory damages" and "[i]t was not reasonable for an attorney to run up a bill" in the hundreds of thousands of dollars to litigate a claim that did not have "broad civil rights implications," but was instead "a damage action for injury suffered from a rancorous employment dispute that degenerated into unlawful racial or ethnic retaliation." Id. at 1146. The Court also stated that "pro rata fee reductions based upon the relationship between damages requested and damages awarded are often inappropriate," id. at 1147, recognizing, however, that Gumbhir presented the unusual case because of the "strong indication the case has been massively over-lawyered," id. at 1144; see also id. n.1 ("The dispute here is personal. The relatively small sums awarded by the jury indicate that in the general scheme of things, the affair was minor and should never have happened. Good sense

-6-

among intelligent, if unfriendly, people should have prevailed. The argument should have been resolved within the community or in some other forum than the courts [and] that it did not is unfortunate." (alteration in original) (quoting Shcheriff v. Beek, 452 F. Supp. 1254, 1261 (D. Colo. 1978)). However, our Court later recognized that Gumbhir presented an "extreme instance," and that, in Gumbhir, "we were sure to emphasize that a pro rata reduction would not normally be appropriate." Simpson v. Merchs. & Planters Bank, 441 F.3d 572, 581 (8th Cir. 2006). This case presents no circumstances suggesting that it is similarly "extreme" based on the relationship between the amount of fees awarded and the damages obtained, and, mindful that a pro rata reduction is normally inappropriate based on this factor, we decline to apply one. Here, the significant award of fees is largely driven by the procedural history of this case, which has involved several jury trials and multiple appeals. There is simply no indication that the fees were the result of an effort to run up fees based on the "rancorous" nature of the dispute. See Gumbhir, 157 F.3d at 1146.

BNSF next argues, in the alternative to the request for the pro rata reduction, that the fee award should be reduced because Blackorby is not entitled to any fees for the first trial, given that the second trial was necessitated by Blackorby's legally erroneous jury instructions, and because Blackorby's attorneys overlawyered the case. To demonstrate overlawyering, BSNF points to the fact that after it became clear that compensatory damages would be capped at less than $60,000, Blackorby's attorneys billed over $450,000 in additional fees. While we have acknowledged that overlawyering can be a basis for a reduction of fees, see Kline v. City of Kan. City, Mo., Fire Dep't, 245 F.3d 707, 709 (8th Cir. 2001) (concluding that district court did not abuse its discretion in awarding attorneys' fees, which included a 15% reduction in requested fees for overlawyering), the record here does not reveal that Blackorby's attorneys overlawyered this case. Although the fees requested in this case are undoubtedly high, this case does not bear the hallmarks of overlawyering, particularly where the case has gone through three separate trials and BNSF

vigorously and aggressively defended the case at every step.[3]  See Cuff v. Trans States Holdings, Inc., 768 F.3d 605, 611 (7th Cir. 2014) ("[H]yperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect.").  We thus decline to decrease the award based on BNSF's allegations of overlawyering.

BNSF's request for the reduction of fees related to the first trial, however, has merit.  Blackorby undisputedly offered the jury instruction that contained a legal error based on Eighth Circuit precedent, which required vacatur of the judgment.  We agree with BNSF that Blackorby is not entitled to fees that were unreasonably caused by his own legal error.  See Shott v. Rush-Presbyterian-St. Luke's Med. Ctr., 338 F.3d 736, 742 (7th Cir. 2003) (holding that plaintiff should not receive attorneys' fees or costs for a first trial when plaintiff opposed jury instructions that may have alleviated the jury confusion that necessitated a second trial); cf. Waldo v. Consumers Energy Co., 726 F.3d 802, 826 (6th Cir. 2013) ("The First, Second, Fifth, Seventh, and Tenth Circuits have all permitted attorney fees to be awarded for multiple trials, so long as 'the plaintiff's unreasonable behavior did not cause' the need for multiple proceedings and as long as counsel's time was reasonably expended." (citations omitted)).

Although the district court reduced the fee award for the time spent on the first appeal, it should have also reduced the fee award for any amount spent on the first trial.  We are unpersuaded by Blackorby's contention, which was accepted by the district court, that the first trial was "vital to the overall case" because it established

---

[3]For example, after successfully appealing the first jury verdict, BNSF hired new counsel, who sought leave from the district court to withdraw several responses to previous Requests for Admission from Blackorby.  In addition, BNSF presented hundreds of new pages of discovery that it wished to introduce in the second trial regarding purported comparators.  After the district court ruled that this evidence would be excluded, BNSF sought reconsideration.  Finally, in advance of the third trial, BNSF again sought to introduce the comparator evidence.  This defense strategy necessitated significant time spent by Blackorby's counsel reviewing the documents and required considerable briefing.

damages for the entire litigation. After the first trial, the parties entered into a stipulation as to the amount of damages: $58,240. However, the parties' voluntary decision to agree on this amount of damages does not mean that the first trial was necessary to determine damages. The parties could have just as easily reached this amount on their own. Further, the district court's award of fees related to the first trial is premised on the notion that the *entire* trial was vital to ascertaining the amount of compensatory damages, however, the trial transcript reveals that significant portions of the trial were devoted to liability and punitive damages, not compensatory damages. Accordingly, the district court abused its discretion by not reducing the fee award by the amount expended on the first trial—$103,642.50.[4]

### III.

For the foregoing reasons, we affirm in part and reverse in part. We remand to the district court with instructions to enter an order reducing the fee award by $103,642.50.

––––––––––––––––––––––––––––––

[4]In its briefing before the district court, BNSF calculated the fees Blackorby incurred for attorney preparation and attendance at the first trial at $103,642.50. R. Doc. 381, at 16. On appeal, BNSF identifies this figure as the amount of fees the district court awarded in relation to the first trial, and Blackorby does not dispute this figure.